***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD DEMCZYSZYN,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>ABC PHONES OF NORTH<br>CAROLINA, INC. d/b/a<br>VERIZON-VICTRA,<br><br>　　　　　　　　Defendant. | Civ. Action No. 20-11072 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

　　Before the Court is defendant ABC Phones of North Carolina, Inc. d/b/a/ Verizon-Victra's ("Defendant") Motion to Compel Arbitration and Dismiss or Stay the Action ("Motion to Compel" or "Motion"). Plaintiff Richard Demczyszyn ("Plaintiff") has opposed the Motion, arguing that Defendant waived its right to compel arbitration due to its delay in filing the Motion after removing the matter to this Court. Because the parties do not dispute that a binding arbitration agreement requires Plaintiff to arbitrate his claims, and because I agree with Defendant that it has not waived its right to compel arbitration, Defendant's Motion is **GRANTED**. However, due to Defendant's delay in seeking to compel arbitration and the unnecessary expenses that Plaintiff has incurred as a result, I will hold a hearing to consider whether sanctions against Defendant, pursuant to my inherent authority, are appropriate. The hearing will be held in accordance with the Order accompanying this Opinion.

I.      BACKGROUND AND PROCEDURAL HISTORY

Defendant is a retailer of wireless products and services operating under the name Verizon-Victra. Defendant hired Plaintiff in February 2017 as a Store Manager in its Toms River, New Jersey location. ECF No. 1, Compl. ¶1. In October 2019, Defendant afforded Plaintiff paid time off to serve on jury duty, starting on November 6, 2019. Compl. ¶¶10–13. When Plaintiff returned to work on November 7, 2019, Defendant terminated Plaintiff, allegedly for committing time-clock fraud amounting to approximately 30 minutes, which Plaintiff denied. *Id.* ¶¶15–17.

Defendant alleges that on March 17, 2017, Plaintiff and Defendant executed an Arbitration Agreement (the "Arbitration Agreement" or "Agreement"). By its terms, the Agreement is binding upon an employee either when the employee signs the Agreement, or when the employee is provided with a copy of the Agreement and thereafter continues with his employment with Defendant for 30 days. ECF No. 13-2 at 17. On this motion, Defendant did not provide a copy of the Agreement with Plaintiff's signature, but it instead refers to an Employee Transcript Report, which allegedly documents Plaintiff's execution of the Agreement. *Id.* at 20.

The Agreement provides, in relevant part, that the "Company and Employee mutually agree to arbitrate . . . any and all disputes or claims by and between Employee, on the one hand, and Company, its parent, subsidiary, and affiliated corporations and entities, and each of their present and former officers, directors, agents, and employees." *Id.* at 13. The Agreement applies to "any and all claims arising from, relating to, or in connection with Employee's recruitment, hiring, and employment, the termination of that employment, and any claims arising post-employment, . . . whether such disputes or claims arise in tort, in contract, or under a statute, regulation, or ordinance." *Id.* The covered claims include those for "wrongful termination of employment" and "for discrimination, harassment, or retaliation, and failure to prevent the same, under any and all federal,

2

state or local laws, regulations, or ordinances that prohibit discrimination, harassment, or retaliation in employment." *Id.*

On March 11, 2020, Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, Ocean County, alleging wrongful termination and a violation of N.J.S.A. 2B:20-17. Compl. ¶¶19–29. Plaintiff served Defendant on July 17, 2020, ECF No. 1 at 8, more than four months after filing the Complaint. On August 21, 2020, Defendant removed the case to this Court, ECF No. 1, and then filed an Answer on September 11, 2020. ECF No. 6. In its Answer, Defendant did not raise the Arbitration Agreement as an affirmative defense, and it certified that no arbitration was pending. *Id.* at 4–6. On October 5, 2020, Plaintiff filed a Proposed Joint Discovery Plan. ECF No. 7. The Honorable Zahid N. Quraishi, U.S.D.J., then a U.S. Magistrate Judge, held a conference on October 6, 2020, pursuant to Federal Rule of Civil Procedure 16 (the "Rule 16 Conference"), which both parties attended. Thereafter, Judge Quraishi issued a Pretrial Scheduling Order, which set October 16, 2020, as the deadline for the parties' initial disclosures and e-discovery conference pursuant to Federal Rule of Civil Procedure 26. ECF No. 8. The Order also set October 31, 2020, as the deadline for the parties' initial written discovery. *Id.*

In accordance with the Order, Plaintiff served its First Set of Interrogatories and First Request for Production of Documents on October 20, 2020. ECF No. 15-3. Defendant did not serve written discovery on Plaintiff by the October 31, 2020 deadline, and it did not respond to Plaintiff's first set of discovery requests within 30 days of service, as required pursuant to Federal Rules of Civil Procedure 33 and 34. On December 8, 2020, Plaintiff's counsel allegedly sent an email to Defendant's counsel advising that its responses to Plaintiff's discovery requests were overdue, to which Defendant's counsel did not respond. ECF No. 15 at 2. Defendant's counsel then requested that Judge Quraishi reschedule a status conference originally scheduled for December 10, 2020, to December 28, 2020. ECF No. 9. Plaintiff consented to the request. ECF No. 15 at 3. Then, on

December 15, 2020, Defendant's counsel sent an email informing Plaintiff, for the first time, that Defendant had a copy of the Arbitration Agreement and requesting that the matter be dismissed and transferred to arbitration. *Id.* According to Plaintiff, Defendant explained that it had "discovered" the Arbitration Agreement while preparing discovery and had not responded to Plaintiff's discovery requests in order to avoid waiving arbitration. *Id.* Defendant does not dispute that it "became aware of an arbitration agreement while preparing responses to discovery requests." ECF No. 18 at 4.

On December 24, 2020, Defendant filed the instant Motion to Compel Arbitration. ECF No. 13. Defendant argues that the parties' Arbitration Agreement requires them to arbitrate Plaintiff's claims for wrongful termination and violation of N.J.S.A. 2B:20-17, and that Defendant has not waived its right to arbitrate this dispute. The parties participated in a status conference on December 29, 2020, after which Judge Quraishi issued an order staying the proceedings pending resolution of Defendant's Motion to Compel. ECF No. 14. Plaintiff then filed his Opposition on January 7, 2021. ECF No. 15. Plaintiff does not dispute the existence of the Arbitration Agreement or that the Agreement generally requires the parties to arbitrate the claims Plaintiff raised, nor does he raise any defenses to the enforceability of the Agreement. Rather, Plaintiff argues only that Defendant waived its right to arbitrate under the Agreement by failing to file its Motion to Compel until after it had removed the case to this Court and discovery had commenced. *Id.* at 3–6. Defendant filed its Reply on January 14, 2021. ECF No. 18.

## II. DISCUSSION

### A. Legal Standard

Congress enacted the Federal Arbitration Act, 9 U.S.C. §§ 1-16, "in response to widespread judicial hostility to arbitration agreements," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011), in order to ensure that "such agreements are enforceable to the same extent as other contracts." *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (internal

4

quotation marks omitted). Section 2 of the FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, "[w]hen a federal court addresses a motion to compel arbitration, . . . [t]he court may consider only narrow 'gateway matters' that touch on the question of arbitrability, such as whether an arbitration agreement applies to a particular controversy, or whether the parties are bound by the arbitration clause." *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012) (quoting *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 585 (3d Cir. 2007)). One such matter is "waiver of the right to arbitrate based on litigation conduct," which "remains presumptively an issue for the court to decide." *Ehleiter v. Grapetree Shores*, Inc., 482 F.3d 207, 221 (3d Cir. 2007).

"[A] party seeking arbitration may waive its right to arbitration when the party opposing the arbitration demonstrates sufficient prejudice arising from the delay of the party seeking arbitration in making its demand." *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011) (citing *Ehleiter*, 482 F.3d at 223). "'Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'" *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 208 (3d Cir. 2010) (quoting *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068–69 (3d Cir. 1995)). In that regard, "'prejudice is the touchstone for determining whether the right to arbitrate has been waived by litigation conduct.'" *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 231 (3d Cir. 2008) (quoting *Ehleiter*, 482 F.3d at 222).

In determining whether a party has waived its right to arbitrate a dispute, the Third Circuit

has "identified six nonexclusive factors to guide the prejudice inquiry:"

> (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.

*Gray Holdco*, 654 F.3d at 451 (citing *Hoxworth v. Blind, Robinson & Co., Inc.*, 980 F.2d 912, 926–27 (3d Cir. 1992)) (the "*Hoxworth* factors"). These factors "generally are indicative of whether a party opposing arbitration would suffer prejudice attributable to the other party's delay in seeking arbitration." *Id.* at 451. However, "not all the factors need to be present to justify a finding of waiver." *Nino*, 609 F.3d 209. Rather, the waiver determination "is necessarily case specific and thus depends on the circumstances and context of each case." *Gray Holdco*, 654 F.3d at 451.

### B.     Waiver Analysis

Because there is no dispute as to whether the Arbitration Agreement covers Plaintiff's claims,[1] the only issue I must decide is whether Defendant waived its right to arbitrate due to its delay in filing the Motion to Compel. Based on an analysis of the *Hoxworth* factors and other considerations established in Third Circuit precedents, I conclude that Defendant has not waived its right to compel Plaintiff to arbitrate his claims.

The first factor I must consider is the timeliness of Defendant's Motion to Compel. In this case, Plaintiff filed his Complaint on March 11, 2020, and Defendant filed its Motion to Compel on

---

[1] The Agreement applies to "any and all claims arising from, relating to, or in connection with Employee's . . . employment," including those for "wrongful termination of employment" and "for discrimination, harassment, or retaliation." ECF No. 13-2 at 13. Accordingly, Plaintiff's claims for wrongful termination and a violation of N.J.S.A. 2B:20-17 fall within the scope of the Agreement. There is also no dispute that the Agreement is binding upon Plaintiff, as he continued his employment with Defendant for more than 30 days after receiving a copy of the Agreement. *Id.* at 17, 20. Moreover, Plaintiff does not dispute that the Agreement is otherwise enforceable.

December 24, 2020. Yet, because Plaintiff did not serve the Complaint until July 17, 2020, ECF No. 1 at 8, the relevant period for purposes of the timeliness inquiry is the five months between service and the date Defendant filed its Motion. On one hand, five months is longer than the period for which the Third Circuit has found no waiver. *See Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir. 2004) (38 days); *PaineWebber*, 61 F.3d at 1069 (two months); *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 680 (3d Cir. 2000) (one-and-a-half months). On the other hand, five months is shorter than the periods which the Third Circuit has found to support a waiver. *See In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d at 118 (ten months); *Gray Holdco*, 654 F.3d at 454 (ten months); *Hoxworth*, 980 F.2d at 925 (11 months); *Nino*, 609 F.3d at 210 (15 months); *Ehleiter*, 482 F.3d at 223 (four years).

Duration aside, courts also consider under the timeliness inquiry whether the moving party has offered a satisfactory explanation for its delay. *See In re Pharmacy Ben. Managers Antitrust Litigation*, 700 F.3d at 118 (retention of new counsel not a satisfactory explanation); *Gray Holdco*, 654 F.3d at 454 (emphasizing moving party's failure to explain the delay). Here, Defendant's only explanation for the delay is "that it became aware of an arbitration agreement while preparing responses to discovery requests." ECF No. 18 at 4. Because diligent counsel would ordinarily identify an applicable arbitration agreement before proceeding with litigation, including removal to federal court and participation in pretrial conferences, I find that Defendant has not provided a satisfactory explanation for its delay. Therefore, I conclude that, based on the aforementioned delay and a lack of explanation to excuse the delay, the timeliness factor weighs slightly in favor of waiver.

The second *Hoxworth* factor is the "extent to which the party seeking arbitration has contested the merits of the opposing party's claims." *Gray Holdco, Inc.*, 654 F.3d at 451. Here, Defendant has not engaged in any dispositive motion practice, but Defendant filed an Answer in which it raised several affirmative defenses, none of which refer to an arbitration agreement or raise the Agreement

as a bar to litigating Plaintiff's claims. ECF No. 6 at 4–5. Nevertheless, compared to cases in which courts found waiver, the extent to which Defendant contested the merits of Plaintiff's claims is minimal. *See, e.g.*, *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d at 118 (filing a motion to dismiss and motion for reconsideration, "with ample briefing and supporting documentation, . . . weighs in favor of finding waiver"); *Gray Holdco*, 654 F.3d at 456–57 (motion for preliminary injunction and opposition to motion to dismiss); *Nino*, 609 F.3d at 210–11 (no motion practice on the merits); *Ehleiter*, 482 F.3d at 223 (motion for summary judgment). And, with respect to merits challenges, this case is comparable to, or contains even less dispositive motion practice than, those in which courts found no waiver. *See Palcko*, 372 F.3d at 598 (motion to dismiss for insufficient service of process); *PaineWebber*, 61 F.3d at 1069 (no briefing on the merits); *Wood v. Prudential Ins. Co. of America*, 207 F.3d 674, 680 (3d Cir. 2000) (motion to dismiss); *Gavlik*, 526 F.2d at 783–84 (no contest on the merits). Accordingly, this factor weighs against waiver.

The third factor assesses whether "the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings." *Gray Holdco*, 654 F.3d at 451. Here, Defendant's counsel notified Plaintiff's counsel of its intent to pursue arbitration on December 15, 2020, nine days before Defendant filed its Motion to Compel. In *Palcko*, the court emphasized, in finding no waiver, that the moving party had requested that the non-moving party "agree to arbitration ten days before filing its motion to compel arbitration," which is similar to the level of notice Defendant provided, here. 372 F.3d at 598. However, in *Palcko*, the moving party filed its motion to compel "within thirty-eight days of learning of the lawsuit," *id.*, a much shorter timeframe compared to the five months it took Defendant to file its Motion to Compel. Furthermore, in assessing this factor, other courts have examined the extent to which the notice allowed the moving party to plan its litigation strategy. *See, e.g.*, *Nino*, 609 F.3d at 212 (concluding that, although the moving party raised arbitration as an affirmative defense in its answer, thereby slightly favoring

8

waiver, the non-moving party was prejudiced to a certain extent by the passage of several months between the answer and motion to compel). Here, Defendant did not raise arbitration as an affirmative defense in its Answer. Rather, Defendant notified Plaintiff of its intent to compel arbitration more than three months after filing its Answer and only nine days before filing its Motion to Compel. Thus, Defendant's notice was of little value to Plaintiff in its litigation-planning efforts during the preceding months. Because the notice Defendant provided was largely a formality, I conclude that this factor is neutral as to whether a waiver occurred.

The fourth factor concerns "the extent to which [the] party seeking arbitration engaged in non-merits motion practice." *Gray Holdco*, 654 F.3d at 451. In this case, Defendant has filed only a Notice of Removal, which does not rise to the level of non-merits motion practice courts have found to support a waiver. *See In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d at 119 ("motions for admission *pro hac vice*, for leave to file a reply brief, and to continue the pretrial conference . . . weigh[] slightly in favor of waiver or [are] (at worst) neutral"); *Nino*, 609 F.3d at 212 (opposition to three motions to compel discovery supported waiver); *Hoxworth*, 980 F.2d at 925–26 (motions to disqualify counsel and stay discovery, and opposition to motions to compel discovery, supported waiver). Furthermore, in *Gavlik*, the court concluded that no waiver had occurred even though the moving party had filed a notice of removal. 526 F.2d at 783–84. This case is, therefore, more similar to those in which the courts found no waiver. *See Palcko*, 372 F.3d at 598 (no non-merits motions mentioned); *Wood*, 207 F.3d at 680 (same). As such, this factor weighs against waiver.

The fifth factor relates to the moving party's "acquiescence to the court's pretrial orders." *Gray Holdco*, 654 F.3d at 451. Here, Defendant participated in a Rule 16 Conference on October 6, 2020, after which the Court issued a Pretrial Scheduling Order setting discovery deadlines and scheduling a status conference for December 10, 2020. Defendant did not comply with the Court's Order to serve its discovery requests by October 31, 2020 and respond to Plaintiff's discovery

9

requests by November 30, 2020. Defendant's counsel also requested an adjournment of the status conference due to a personal conflict, ECF No. 9, although counsel ultimately joined a status conference on December 29, 2020. This level of acquiescence surpasses that in cases where the Third Circuit has found no waiver, which "generally were not litigated long enough to feature any acquiescence in pretrial orders." *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d at 119 (citing *PaineWebber*, 61 F.3d at 1065; *Gavlik*, 526 F.2d at 783–84; and *Wood*, 207 F.3d at 680, in which the moving party only filed a joint discovery plan). However, because Defendant's actions fall well below the level of acquiescence that has supported waiver in other cases, *see id.* (participation in hearings on motions to dismiss and reconsider, as well as failure to object to pretrial scheduling orders, supported waiver); *see also Gray Holdco*, 654 F.3d at 459–60 (attending three status conferences and a court-ordered mediation, and filing a Rule 26(f) report, supported waiver); *Nino*, 609 F.3d at 212 (participation in ten pretrial conferences supported waiver); *Hoxworth*, 980 F.2d at 925 (participation in "numerous pretrial proceedings" supported waiver), this factor weighs slightly against waiver.

The sixth and final factor addresses "the extent to which the parties have engaged in discovery." *Gray Holdco*, 654 F.3d at 451. Third Circuit decisions "finding waiver have uniformly featured significant discovery activity in the district court." *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d at 120; *Nino*, 609 F.3d at 213 (discovery included the preparation of a "proposed case management order which contained no mention of arbitration, propound[ing] interrogatories, serv[ing] and supplement[ing] disclosures, exchang[ing] requests for document production, and attend[ing] the depositions of four witnesses"); *Ehleiter*, 482 F.3d at 210, 224–25 (both parties "submitted and responded to several sets of interrogatories and requests for production of documents, took numerous depositions, and submitted several expert reports"); *Hoxworth*, 980 F.2d at 925–26 (moving party conducted depositions and responded to discovery requests, which prompted motions

to compel document production and answers to interrogatories). However, in cases finding no waiver, "no discovery took place." *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d at 120 (citing cases). Here, Plaintiff served its first set of interrogatories and a request for document production, ECF No. 15-3, but Defendant did not respond, or serve its own discovery requests. This level of discovery is below that which courts have typically found to support a waiver, but it is also above the level that did not support waiver. Because Defendant acquiesced in the discovery process without objection or any indication that it would seek to compel arbitration, thereby inviting Plaintiff to begin its own discovery efforts, I find that this factor weighs slightly in favor of waiver.

Based on the foregoing analysis, I have concluded that two factors weigh slightly in favor of waiver, one factor is neutral, and three factors weigh against waiver. Thus, based on an assessment of each of the *Hoxworth* factors, a finding of waiver is not supported.

In addition to analyzing the *Hoxworth* factors individually, the Third Circuit has emphasized that courts may also consider whether "the overall circumstances of th[e] case indicate that [Defendant], through its litigation conduct, has waived its right to arbitrate." *Gray Holdco*, 654 F.3d at 461. I find that an examination of Defendant's litigation conduct reinforces my conclusion that Defendant has not waived its right to arbitrate. The five months between Plaintiff's service of the Complaint and Defendant's Motion to Compel is far shorter than the ten months to multiple years, that have supported waiver in other cases. Other than filing an Answer, Defendant has not contested Plaintiff's claim on the merits, which falls well below the level of contestation, through dispositive motions, that has supported waiver. Similarly, in comparison to cases finding waiver, which involved multiple motions opposing discovery requests, Defendant has not engaged in any non-dispositive motion practice, here. And, although Defendant's notice to Plaintiff regarding its intent to seek arbitration came late, Defendant, nevertheless, provided notice before moving to compel arbitration. The factor that most supports waiver is the parties' participation in discovery, as Defendant agreed

11

to the Magistrate Judge's deadlines, and Plaintiff thereafter served its first discovery requests. But even the level of discovery, here, falls below the "significant discovery activity" that has supported waiver in other cases. *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d at 120. Taken together, these considerations indicate that Defendant's delays were relatively modest compared to the litigation conduct that has amounted to waiver in the case law. Accordingly, I conclude that Defendant has not waived its right to arbitrate and, therefore, Defendant's Motion to Compel is granted.

      **C.**    **Sanctions**

Despite my conclusion that Defendant did not waive its right to arbitrate, Defendant's failure to comply with the Court's discovery deadlines and the unnecessary expense of time and resources it imposed upon Plaintiff cannot be ignored.

In that regard, this Court possesses the inherent authority "'to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (2011) (concluding that courts possess the authority to impose sanctions "in response to abusive litigation practices"). These powers are "'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962)). "One permissible sanction is an 'assessment of attorney's fees,'" which the Court may impose in the form of "an order . . . instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Haeger*, 137 S. Ct. at 1186 (quoting *Chambers*, 501 U.S. at 45). "The complaining party may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)). However, before imposing sanctions, the Court "must ensure that there

is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified." *Chambers*, 501 U.S. at 43.

Here, I find that it is appropriate to hold a hearing in order to assess whether sanctions, in the form of attorneys' fees Plaintiff incurred since removal to this Court, are warranted based on Defendant's delay in seeking to compel arbitration. Defendant has demonstrated an intent to litigate Plaintiff's claims by removing this case to federal court, answering Plaintiff's Complaint, participating in a Rule 16 Conference, and agreeing to various discovery deadlines set forth in the court's Scheduling Order. In response, Plaintiff began the discovery process by preparing a Proposed Joint Discovery Plan, participating in the Rule 16 Conference, and preparing interrogatories and document requests. Between the October 6, 2020 Order setting discovery deadlines and Defendant's email to Plaintiff on December 15, 2020, Defendant did not once notify Plaintiff regarding the Arbitration Agreement. Defendant also failed to comply with the court's discovery deadlines, including the October 31, 2020 deadline to serve discovery requests and the November 30, 2020 deadline to respond to Plaintiff's requests. At no time did Defendant provide any indication to Plaintiff that it would be unable to comply with the discovery deadlines, or otherwise explain its delay, until December 15, 2020—five months after Plaintiff served the Complaint—when Defendant apparently informed Plaintiff that it had violated the discovery deadlines in order to avoid waiving its rights to arbitrate. ECF No. 15 at 3. Yet, at the very least, Defendant could have provided notice to Plaintiff or notified the Magistrate Judge and requested to stay discovery once it discovered the Agreement. While Plaintiff has not submitted any documentation of the expenses it incurred during the court proceedings, it is reasonable to conclude that Defendant's unexplained delay, whether caused by inadvertence or lack of due diligence, caused Plaintiff to incur unnecessary expenses while preparing for, and engaging in, discovery. Plaintiff incurred these expenses in reliance on Defendant's conduct, which conveyed the impression that Defendant was committed to litigating

Plaintiff's clams in court. Moreover, Defendant concedes that the only reason for its delay is its belated discovery of the Arbitration Agreement. ECF No. 18 at 4.

Based on these considerations, I find that it is necessary to hold a hearing in order to determine whether sanctions against Defendant are appropriate.

## III.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Compel Arbitration and Dismiss or Stay the Action is **GRANTED**. Plaintiff's claims are referred to arbitration, as required under the parties' Agreement. In accordance with this Opinion and the accompanying Order, the Court will hold a hearing to consider whether sanctions against Defendant are warranted. An appropriate form of Order is filed herewith.

Date: July 30, 2021                                   /s/ Freda L. Wolfson
                                                      Hon. Freda L. Wolfson
                                                      U.S. Chief District Judge